```
IN THE DISTRICT COURT OF THE UNITED STATES
    FOR THE DISTRICT OF SOUTH CAROLINA
         ANDERSON/GREENWOOD DIVISION
```

| | | |
|---|---|---|
| Michael L. Jones, | ) | Civil Action No. 8:10-15-JFA-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Michael McCall, SCDC Perry CI; | ) | |
| Associate Warden Claytor, SCDC Perry CI; | ) | |
| Major Denis Bush, SCDC Perry CI; | ) | |
| Captain Miller, SCDC Perry CI; | ) | |
| Lt. Tamara Conwell, SCDC Perry CI; | ) | |
| Lt. Harouff, SCDC Perry CI; | ) | |
| Dr. Benjamin Lewis, Perry CI; | ) | |
| Nurse Practitioner III Amy Enloe, SCDC Perry CI; | ) | |
| LPN Cathy Jones, Perry CI; | ) | |
| LPN Tippen, Perry CI; | ) | |
| RN Adetoro Sobwale, Perry CI; | ) | |
| RN Soloan, Perry CI; | ) | |
| Warden Stevenson III, BRCI; | ) | |
| Dr. Donald Samson, BRCI; | ) | |
| LPN Geneva Walters, BRCI; individual and | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the Defendants' Motion for Summary Judgement. (Dkt. # 33.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

On May 10, 2010, the Defendants filed a Motion for Summary Judgment. (Dkt. # 33.) On May 11, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On June 11, 2010, the Plaintiff filed a response opposing the Defendants' Summary Judgment Motion. (Dkt. # 37.)

**FACTS**

In his Amended Complaint, the Plaintiff alleges claims of deliberate indifference to his serious medical needs, inhumane conditions, and violations of the Eighth Amendment.[1] (Am. Compl.) The Plaintiff is seeking actual and punitive damages, attorney's fees, and costs.

Specifically, the Plaintiff alleges that on May 6, 2009, one of his spinal disks ruptured and he suffered excruciating pain from May 6th until October 14, 2009, due to the Defendants gross negligence. (Am. Compl. at 3.) The Plaintiff alleges that on May 6th, he was unable to move and in severe pain. He alleges the Defendant Captain Miller made him move by threatening to withhold his medications. (Am. Compl. 15.) He alleges moving caused him excruciating and unnecessary pain. (Am. Compl. at 16.) He also states Miller told Sgt. Stevens to move the Plaintiff to his bunk without any regard for further injuring the Plaintiff. *Id*. He alleges he was placed on his bunk bed and not checked on for hours. *Id.* He states that while attempting to use the bathroom, he fell onto his cell floor and urinated upon himself. He alleges that the Defendants Nurses Amy Enloe and Sobwale refused to provide him any

---

[1]Initially, the Plaintiff filed a 49-page complaint which as the Defendants state "read like a diary" and included 92 pages of exhibits. In response to the undersigned's order to submit a concise, amended complaint, the Plaintiff filed a 26-page Amended Complaint. (Dkt. # 19 - Am. Compl.)

medical care. (Am. Compl. at 3 and 11.) The Plaintiff alleges the Defendant Tamara Conwell was aware of the Plaintiff's situation and that he had missed breakfast, but she did nothing. (Am. Compl. at 17.)

On May 7th, he alleges the Defendant Nurse Cathy Jones ignored his requests for help and set his pills outside of his reach. (Am. Compl. at 5.) He also alleges that despite a South Carolina Department of Corrections ("SCDC") policy which prohibits the moving of prisoners with spinal injuries, Nurse Enloe ordered officers to transport the Plaintiff by wheel chair to medical. (Am. Compl. at 3.) He states that on May 7th, he saw the Defendant Dr. Lewis and told him he could not move or sit up without extreme pain and that Dr. Lewis failed to order him an MRI. (Am. Compl. at 9.) He acknowledges he was given a pain reliever on May 7th, and he states he was placed back in his cell unable to move and not washed off. (Am. Compl. at 4.) He states that on May 8th, he asked for help in going to the bathroom, but because Nurse Enloe had not ordered that the officers help him, the officers refused to help him. *Id.* He alleges he was unable to make it to the toilet and he defecated on himself. *Id.* He alleges he was left in his own feces for seven and a half hours. *Id.*

The Plaintiff alleges that on May 20th, the Defendant Lt. Harouff denied him his medications by placing them out of his reach, refused to afford him a shower, and refused to empty his full urinal causing him to urinate on his cell floor. (Am. Compl. at 19.)

The Plaintiff alleges that on May 24th, the Defendant Nurse Tippen refused to give him his medications stating that she had already given them to him. (Am. Compl. at 9.) He alleges it turned out Nurse Tippen had given his medications to the wrong prisoner. (Am. Compl. at 10.) He also alleges he asked Nurse Tippen for constipation medication and she refused.

3

(Am. Compl. at 9.) He alleges that he suffered bleeding from his rectum as a result. (Am. Compl. at 10.)[2]

On May 25th, the Plaintiff alleges he fell in the shower and that the Defendant Nurse Sloan told him his injury was not severe enough to make him a priority. The Plaintiff alleges she also discontinued his prescription for Tylenol 3 and it was not reinstated until days later. (Am. Compl. at 11.) The Plaintiff alleges he had sought permission to shower in a special medically equipped shower, but the Defendant Major Dennis Bush denied his request. (Am. Compl. at 14.)

On June 9th, the Plaintiff alleges he awoke with tingling and numbness in his leg and he asked Nurse Jones who was passing out morning medications if he should move. (Am. Compl. at 7.) He states she told him no and asked him if he was on a hunger strike and refusing his medications. *Id.* He alleges he told her that he was not, but rather he was afraid to move and he requested medical attention. *Id.* He alleges Nurse Jones ignored his request and threw him his medications. *Id.* He alleges Nurse Jones returned at noon and again refused his request for help and threw his medications at him. *Id.* During evening medications handouts, the Plaintiff alleges he asked Nurse Jones for water so he could take his medications, but she refused and wrote on his chart that he had refused his medications. He also alleges the Defendant Dennis Bush refused to give his permission for the Plaintiff to be given water. (Am. Compl. at 15.)

---

[2]The undersigned notes that a report and recommendation recommending the dismissal of the Defendant Nurse Tippen on the ground that she was never served is currently pending before the United States District Court. (Dkt. # 58.)

On June 3, 2009, the Plaintiff alleges he complained to medical staff that he was having side effects from the Tylenol 3 he was taking, including nausea. (Am. Compl. at 4.) He states that on June 11th, he began to vomit and could not stop. *Id.* He also alleges Lt. Harouff was aware that he had vomited, but denied the Plaintiff's requests for a clean blanket and sheets and for a mop to clean the cell floor. (Am. Compl. at 19.)

On June 22nd, the Plaintiff alleges that he complained of leg cramps, but that the medical staff did not do anything. *Id.* On June 26th, the Plaintiff alleges he was attempting to stand up from the toilet and he experienced excruciating pain which caused him to fall and he struck his tail bone on the toilet. *Id.* He alleges that once in medical, Nurse Enloe deliberately grabbed his leg so as to cause him pain. The Plaintiff alleges Conwell was aware of the Plaintiff's situation, but told him he had to get into a wheel chair in order to be seen by medical. (Am. Compl. at 17.) He also alleged that Conwell insisted that the Plaintiff leave medical in a wheelchair. He states he refused, and Conwell called for assistance and he was subsequently thrown into the wheelchair. *Id.*

The Plaintiff alleges that on June 5th, he informed both the Warden McCall and Associate Warden Claytor about the alleged deliberate indifference to his medical needs by filing a grievances. He alleges neither answered. *Id.* The Plaintiff also alleges he was denied permission by Associate Warden Claytor to use a special medically equipped shower in another unit and as a result he states he went without showering from May 25th until July 17th. (Compl. at 12-13.)

The Plaintiff alleges he submitted a grievance to the Defendant Warden Stevenson, but that Stevenson did not respond for three months and then stated that the Plaintiff's issues had been resolved because the Plaintiff had eventually received surgery. (Am. Compl. at 20.)

The Plaintiff alleges that on July 13th, without examining him, the Defendant Dr. Donald Samson took the Plaintiff off his pain medication. (Am. Compl. at 20.) He also alleges Dr. Samson did not do anything about the Plaintiff's complaint of a knot under his nipple which "self-corrected" a month later. (Am. Compl. at 22-23.)

On September 18th, the Plaintiff alleges he awoke to experience scrotum and anal pain and so he laid down on the floor to ease the pain. (Am. Compl. 23.) He states that Nurse Cheryl told him he needed to get up, but he explained he could not. The Plaintiff alleges Dr. Samson was notified of the Plaintiff's new symptoms and he ordered a injection of Nubain and Naproxen. *Id.* The Plaintiff states he told them that Naproxen caused him severe stomach pain and he alleges Dr. Samson said he could either take the medication, or refuse it. *Id.* He states he was prescribed milk of magnesium which did not alleviate his stomach pains. (Am. Compl. 23-24.) He states his scrotum and anal pains continued until he had surgery on October 14th. (Am. Compl. at 24.) He also alleges the Defendants Nurse Geneva and Dr. Samson altered the surgeon's order for Percocet so that the Plaintiff would not receive it at night. *Id*.

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

**Claims of Deliberate Indifference to Serious Medical Needs**

The Plaintiff alleges the Defendants were deliberately indifferent to his serious medical needs from May through October 2009. (See generally Am. Compl.) The Defendants contend, inter alia, that the Plaintiff has failed to state such a claim.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id*. The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard. In *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825; *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

In order to be liable for deliberate indifference, the Plaintiff must prove that the Defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also that they had drawn the inference. *See Young v. City of Mount Rainer*, 238 F.3d 567, 575-76 (4th Cir. 2001) (holding "[d]eliberate indifference requires a showing that the defendants . . . actually knew of and ignored a detainee's serious need for medical care."). The mere fact that a prisoner may believe he had a more serious injury or that he required a different treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir.1975). The Fourth Circuit has held that treatment (or lack thereof) "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness . . . mere negligence or malpractice does not violate the Eighth Amendment." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Similarly, alleged delays in providing adequate care also do not rise to the level of deliberate indifference where the delay does not cause further injury. *Kane v. Hargis*, 987 F.2d 1005, 1009 (4th Cir.1993). Reviewing the Plaintiff's medical records, the undersigned concludes that the Plaintiff has not been denied medical treatment and the Defendants have not been indifferent to the Plaintiff's serious medical needs.

The undersigned notes that the Plaintiff in his memorandum opposing summary judgment, takes issue with the medical Defendants requiring that the Plaintiff undergo new

examinations and not relying on previous tests and diagnoses. (Pl.'s Mem. Opp. Summ. J. Mot. at 5.) He contends that having to undergo x-rays and physical therapy and through the orthopedic clinic "equaled no treatment at all cause Plaintiff made clear his injury was of a spinal nature that was well documented." *Id*. The undersigned disagrees that such action equals no medical treatment. Contentions like the Plaintiff's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a §1983 constitutional claim of deliberate indifference. To claim that the Defendants acted with deliberate indifference when providing the Plaintiff with treatment, the Plaintiff must allege that the treatment was more than just mere negligence, and that the prison medical personnel acted with complete disregard for his health or safety. However, the Plaintiff's voluminous medical record clearly demonstrates that throughout the period in question, the Plaintiff received regular, comprehensive medical treatment for his back injury. He was prescribed pain medication and physical therapy, underwent an MRI, was treated in the prison infirmary, sent to a neurosurgeon for evaluation, and underwent surgery to repair a ruptured disk in his lower back. The undersigned cannot find that the Defendants' treatment of the Plaintiff was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Estelle,* 429 U.S. at 105

At most, the Plaintiff is alleging malpractice or a delay in treatment. Specifically, the Plaintiff alleges there was a delay in treating him on May 6th and he was denied pain medications on other occasions if the undersigned liberally construes the Plaintiff's allegations regarding the throwing of his medications out of his reach or denying him water to take with his medications. However, the Plaintiff's claims still fail. "[A]n inmate who complains that delay in

10

medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir.1994). As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann,* 906 F.Supp. at 1037. *See also Turner v. Knight*, 121 Fed. Appx. 9, 13-14 (4th Cir.2005) (finding no evidence that "the failure to provide Turner with medical attention resulted in substantial injury"); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995)(holding delay in the receipt of medical care only constitutes deliberate indifference where the plaintiff can show that the delay, itself, caused substantial harm or injury.) There is no evidence, medical or otherwise, in the record that any delay in treatment of the Plaintiff caused him substantial harm or injury.

Furthermore, as the Defendants argue, the Plaintiff cannot recover damages for mental or emotional injuries because physical injuries are a prerequisite for an award of damages for emotional distress under § 1983 which the Plaintiff has not proven. The Prison Litigation Reform Act ("PLRA") provides that physical injuries are a prerequisite for an award of damages for emotional distress under § 1983. *See* 42 U.S.C. § 1997e(e). "Physical pain, standing alone, is a de minimis injury that may be characterized as a mental or emotional injury and, accordingly, fails to overcome the PLRA's bar; but, when paired with allegations of physical effects, physical pain may support a claim under the PLRA." *Clifton v. Eubank,* 418 F.Supp.2d 1243, 1246 (D.Colo. 2006) (*citing Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) (finding that prolonged chest pain, followed by a heart attack, formed the basis for a claim not for emotional injury, but for physical injury, and, thus, survived the PLRA bar). *See also Jarriett v. Wilson*, 414

11

F.3d 634, 641 (6th Cir. 2005) (assuming without deciding that physical pain is a mental or emotional injury and that plaintiff's claims, when they alleged only pain associated with the moderate swelling of a toe that required no medical treatment, were insufficient to overcome the PLRA bar). Here, the Plaintiff has failed to present any evidence that the alleged one day delay in treatment, itself, caused him any physical injury. As for his allegations that some of the Defendants denied him medications by throwing them out of his reach or refusing to give him water with which he could take the medications, the undersigned also finds he has not alleged any physical injury. Furthermore, the Plaintiff's medical records show that the day before the date he alleges the medications were placed outside of his reach, on May 19th, the Plaintiff had been released from the infirmary and provided a walker and it was noted he was ambulating. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 5 at 29.) As the Plaintiff has not provided evidence of any physical injury as a result of his allegations of medical indifference, he is not entitled to recover for mental anguish or emotional distress under § 1983.

Furthermore, the Fourth Circuit has held that to bring a denial of medical treatment claim against non-medical prison personnel, an inmate must show that such official was personally involved with a medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn,* 896 F.2d 848 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the Plaintiff has not alleged facts

stating any claim actionable under § 1983 regarding his course of medical treatment against non-medical personnel Defendants.[3]

Accordingly, based on the foregoing, the Plaintiff has failed to state a claim for medical indifference.

**Claims Regarding Living Conditions/Eighth Amendment Violations**

The Plaintiff also alleges claims regarding his living conditions. Specifically, he contends that some of the Defendants left him in his own urine and feces, denied him showers for weeks, and denied him clean bed linens or other cleaning supplies after he vomited in his cell.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes. *Rhodes*, 452 U.S. at 347. Consequently, "extreme deprivations are

---

[3]The undersigned notes that the Plaintiff specifically states that he is not relying on the doctrine of supervisory liability. (Pl.'s Mem. Opp. Summ. J. Mot. at 9.)

13

required to make out a conditions-of-confinement claim." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). *See also Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir.1997) (stating that "only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"). Specifically, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. *Strickler v. Waters*, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); *Helling v. McKinney,* 509 U.S. 25 (1993). The alleged deprivation be "objectively sufficiently serious," a court must consider whether the correctional officers' actions, taken contextually, were objectively harmful enough to offend contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1993). A condition of harm is sufficiently serious if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary or wanton infliction of pain." *Estelle*, 429 U.S. at 102-03. Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind. *Strickler*, 989 F.2d at 1379; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (holding to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious," but the Defendant must also have acted with a "sufficiently culpable state of mind").

Here, the Plaintiff fails to show that his constitutional rights were violated with regard to his living conditions. If a prisoner cannot show that he suffered a serious or significant physical or mental injury as a result of the challenged prison condition, "he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." *Strickler*,

14

989 F.2d at 1381. The Plaintiff in this case alleges he was denied a shower and clean bed linens which liberally construed resulted in pain and suffering. However, as stated above, 42 U.S.C. § 1997e bars the plaintiff's claim for emotional suffering without a prior showing of physical injury caused by the denial of the allegedly inhumane living conditions. The Plaintiff has not made any allegations that he suffered any deleterious physical injury from the denial of showers or linens and there is nothing in the evidence (and certainly not in the medical evidence) to show anything to the contrary. Therefore, the Plaintiff fails to state a claim of constitutional magnitude because the Plaintiff's injury from his allegedly inhumane living conditions is de minimis. *Cf. White v. Gregory,* 1 F.3d 267, 269 (4th Cir. 1993). Nor does the Plaintiff allege that a shower was the only means by which he could have cleaned himself. In fact, in his Amended Complaint, the Plaintiff alleges he had sought permission to shower in a special medically equipped shower, but the Defendant Major Dennis Bush denied his request. (Am. Compl. at 14.) He does not allege he was denied the opportunity to otherwise shower or clean himself. *Turner v. Dotsun,* 2005 WL 4898860 (D.Md. 2005)(noting the inmate may have had access to water and other cleaning supplies).

Further, the Plaintiff fails to show that subjectively the Defendants acted with a sufficiently culpable state of mind. The Plaintiff's general and conclusory allegations about the conditions of his confinement and the other complaints are simply insufficient standing alone without any supporting evidence to create a genuine issue of fact as to whether his constitutional rights have been violated. *House v. New Castle Co.,* 824 F.Supp. 477, 485 (D.M.D.1993) (holding plaintiff's conclusory allegations insufficient to maintain claim).

The Plaintiff's also claims that the Defendants have not properly followed their own

15

policies and procedures when moving him, even if true, also fail to set forth a claim of a constitutional magnitude. See Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) (holding violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). *See Riccio v. County of Fairfax, Virginia,* 907 F.2d 1459, 1469 (4th Cir. 1990)(holding if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).

Likewise, to the extent that the Plaintiff also raises claims regarding the Defendants' failure to properly respond to his grievances, the Plaintiff has not stated a constitutional claim. Even if the Defendants failed to respond, or timely respond, to the Plaintiff's grievances, the Plaintiff has not stated a constitutional claim. The law is well-settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure").

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment (Dkt. # 33) be GRANTED.

IT IS SO RECOMMENDED.

                                                  s/Bruce Howe Hendricks
                                                  United States Magistrate Judge

September 16, 2010
Greenville, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**